[960 NYS2d 70]

Nassau Beekman LLC, Appellant, v Ann/Nassau Realty LLC, Respondent.

First Department, January 31, 2013

34

**APPEARANCES OF COUNSEL**

*Claude Castro & Associates, PLLC*, New York City (*Claude Castro* and *D. Paul Martin* of counsel), for appellant.

*Greenberg Traurig, LLP*, New York City (*Steven Sinatra* and *Daniel R. Milstein* of counsel), for respondent.

**OPINION OF THE COURT**

Saxe, J.

A standard provision included in many commercial contracts is one requiring any modification of the agreement to be in writing. Nevertheless, courts are presented over and over again with litigation arising out of circumstances where one party to a contract wrongly presumes, based on past practice, that an oral modification will be sufficient. This appeal illustrates the problem.

Plaintiff, by contract dated August 14, 2007, agreed to purchase and defendant agreed to sell a parcel of real property comprised of 21 Ann Street and 109, 111 and 113 Nassau Street, in Manhattan, for a purchase price of $56,700,000, with a down payment of $5 million. Section 16.01 of the contract contained a standard integration clause and included a provision that "[n]either this Contract nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument."

The contract provided for the closing to occur on August 30, 2007, but gave plaintiff the right, upon timely written notice, to extend the closing date to October 10, 2007, and declared time of the essence with respect to that date. It further specified that "[f]ailure of the Purchaser or Seller to strictly comply with the terms of this Section shall be deemed in material default under this Contract."

Simultaneously with the execution of the contract of sale, the parties entered into a separate handwritten agreement regarding development air rights to be purchased from the owners of the adjacent condominium property at 25 Ann Street; the seller agreed to purchase those rights by August 24, 2007 and to promptly deliver the resulting agreement to plaintiff and assign plaintiff those rights. Once an agreement with the condominium owners was executed and delivered, a default by any party under that agreement would be deemed a default by that party under the contract of sale. This agreement initially permitted defendant to spend up to $1.3 million to acquire those development air rights, which maximum price was later increased to $1.55 million by a written modification. Importantly, the parties' agreement regarding those development rights provided that if the rights were not obtained from the condominium owners, defendant would have no liability to plaintiff, and that its failure to deliver those rights would not affect the contract of sale.

The closing date for the contract of sale was rescheduled multiple times by written amendments to the contract. It is plaintiff's contention that it was a standard practice of the parties to orally adjourn the closing date and then later to finalize a written amendment with a new closing date. In the first written amendment to the contract, the closing date was extended

to November 7, 2007, with the ability to further extend it to November 21, 2007. In consideration for that extension, plaintiff paid an additional deposit of $2.5 million. Then, on November 21, 2007, the parties executed a second amendment, extending the closing to November 27, 2007 but noting that time was of the essence. On November 27, 2007, the parties again executed an amendment extending the closing date to February 14, 2008, but permitting the closing to take place no later than March 14, 2008. This amendment also required plaintiff to pay an additional deposit of $2.5 million, although in fact plaintiff paid only $1.5 million of that amount. On March 5, 2008, the parties executed the fourth amendment to the contract, providing for an outside closing date of April 4, 2008, with time of the essence. This amendment also reduced the total purchase price to $51,030,000, and defendant waived plaintiff's outstanding obligation to pay an additional $1 million deposit.

The closing did not take place on or before April 4, 2008, nor was it adjourned by a written amendment to the contract. However, rather than terminate the contract based on the failure to close, on July 25, 2008 defendant unilaterally sent plaintiff a "time of the essence closing notice" scheduling a closing for September 3, 2008.

On September 2, 2008, the parties executed another amendment, in which the July 25, 2008 notice was withdrawn and a new closing date set for September 17, 2008, with time of the essence. Finally, on September 16, 2008, the parties executed an amendment agreeing that the closing "shall be 12:00 noon on September 25, 2008 time of the essence for Purchaser to perform its obligations."

On September 25, 2008, defendant appeared for a closing shortly after noon; plaintiff did not appear. Defendant's principal owner, Robert G. Friedman, prepared a record reflecting the various documents that were ready to be delivered to plaintiff upon closing of the contract of sale, including a bargain and sale deed and an assignment and assumption agreement assigning to plaintiff the development air rights related to 25 Ann Street.

The parties met later that day, in an effort to negotiate a new written amendment to the contract. Emails sent by plaintiff after noon on this date reference an unexecuted proposed fifth amendment to the contract. However, no written modification resulted, and six weeks later, on November 6, 2008, defendant sent plaintiff a notice of termination, stating that defendant

elected to exercise its contractual remedy to retain the down payment as liquidated damages.

Plaintiff then brought this action, seeking the return of its down payment and additional money damages for what plaintiff termed defendant's alleged wrongful termination and anticipatory breach of the contract of sale and the related development air rights agreement. In its answer, defendant asserted a breach of contract counterclaim seeking to retain the deposit as liquidated damages.

Defendant moved for summary judgment dismissing the complaint and for summary judgment on its counterclaim. Plaintiff opposed the branch of defendant's motion seeking judgment on its counterclaim on the ground that defendant failed to attach the closing documents with the motion, making it impossible to determine if its tender was proper. Plaintiff also cross-moved for summary judgment, arguing that the September 25, 2008 closing had been adjourned by oral agreement on consent of the parties, relying on the parties' history of adjourning the closing without signed writings; it also asserted that defendant had breached the contract by failing to deliver to plaintiff the development rights agreement with the condominium owners once that agreement was executed.

The motion court denied plaintiff's cross motion for summary judgment on its contract claim against defendant, and granted the branch of defendant's motion seeking summary judgment dismissing plaintiff's contract claim, which ruling plaintiff now challenges on appeal. It also denied the branch of defendant's motion seeking summary judgment on its counterclaim, but granted leave to renew upon submission to the court of the tendered documents; while defendant does not challenge the latter aspect of the ruling on appeal, plaintiff appears to take the position that the grant of leave to renew was improper, in that defendant would not be entitled to summary judgment in any event because defendant never attempted to tender performance *in plaintiff's presence.*

Discussion

The motion court correctly denied plaintiff's motion for summary judgment on its complaint and granted summary judgment dismissing plaintiff's complaint.

■ For plaintiff to establish the right to summary judgment, it had the burden of establishing as a matter of law that it was not in breach of the contract, and that it was actually defendant

that was in breach. Initially, in view of the terms of the written contract, the most recent modification of which set the closing for September 25, at 12:00 noon, and the demonstration that defendant appeared at that place and time asserting that it was ready, willing and able to deliver title while plaintiff failed to appear, the documentary evidence provides no support for plaintiff's claim (*see Morgan Barrington Fin. Servs. v Roman*, 27 AD3d 385 [1st Dept 2006]; *Sikander v Prana-BF Partners*, 22 AD3d 242 [1st Dept 2005]). Consequently, plaintiff must rely on its claims that the parties orally agreed to adjourn the scheduled closing to an undetermined future date. However, since plaintiff's assertion to that effect is disputed by defendant, plaintiff clearly failed to establish a right to summary judgment on its breach of contract claim against defendant.

The question then becomes whether plaintiff's evidence suffices to create an issue of fact as to whether the parties' written agreement was modified by an agreement extending the closing date. Since the contract of sale provided that any amendments or modifications must be in a signed writing, under General Obligations Law § 15-301, the contract cannot be changed by an executory agreement that is not in a signed writing.

■ We reject plaintiff's contention that the parties fully performed the oral modification of the contract providing for the adjournment of the closing, since they met at 3:00 p.m. on September 25, 2008. At best, that 3:00 p.m. meeting could qualify as partial performance of the alleged oral modification. But, while partial performance of an alleged oral modification may permit avoidance of the requirement of a writing, any such partial performance must be unequivocally referable to the modification (*see Rose v Spa Realty Assoc.*, 42 NY2d 338, 341 [1977]). The "unequivocally referable" standard requires that the conduct must be "explainable only with reference to the oral agreement." Where the conduct is "reasonably explained" by other possible reasons, it does not satisfy this standard. (*Anostario v Vicinanzo*, 59 NY2d 662, 664 [1983].) If "the performance undertaken by plaintiff is also explainable as preparatory steps taken with a view toward consummation of an agreement in the future," then that performance is not "unequivocally referable" to the new contract (*id.*).

In *Rose v Spa Realty Assoc.* (42 NY2d 338 [1977], *supra*), partial performance was successfully relied on to establish the existence of an oral modification of a contract. There, the plaintiff land developers entered into an written agreement to

purchase land from the defendants, which agreement specified that it could not be modified orally. While the written contract anticipated and provided for the eventual purchase of 76 acres for the construction of an 800-unit housing development, the process was broken down into stages so that, for instance, neither party was obligated to proceed further unless approvals for at least 150 dwelling units had been obtained for construction on the first parcel. However, before any of the property was conveyed, it was discovered that sewage problems made it unlikely that the sellers would be able to obtain approvals for the 150 units on the first parcel. Rather than abandoning the enterprise or adopting a new, written purchase plan, the parties orally agreed to a modification by which the number of units to be built on the first parcel would be reduced from 150 units to 96 units. The Court held that this oral modification was sufficiently supported by conduct unequivocally referable to the modification. Specifically, after applying for government approval plans for the first 48 units as the written contract provided, the sellers then applied, *not* for approval of an additional 102 units as contemplated by the contract, but only for an additional 48 units, as the parties had orally agreed. The total of 96 units was not reflected anywhere in the contract documents, and was explainable only by reference to the oral modification.

Plaintiff's submissions fail to satisfy this standard. None of the documents and events that plaintiff relies on are unequivocally referable to the alleged oral extension. The *unexecuted* proposed fifth amendment to the contract, the emails exchanged between the parties after noon on September 25, 2008, and the 3:00 p.m. meeting attended by the parties that day are insufficient. Not only do the emails fail to even indicate that the closing was adjourned by agreement, but all these items were clearly explainable as preparatory steps taken with a view of attempting to arrive at a possible agreement in the future (*see Sutphin Mgt. Corp. v REP 755 Real Estate, LLC*, 73 AD3d 738 [2d Dept 2010]; *RAJ Acquisition Corp. v Atamanuk*, 272 AD2d 164 [1st Dept 2000]). In the absence of a resulting written modification, the mere fact that the parties met at 3:00 p.m. does not negate plaintiff's default at the 12:00 p.m. closing, or reflect an adjournment of that scheduled closing; it may be understood to merely reflect that defendant was willing to attempt to negotiate a new modification, as the parties had done once before, and which, if accomplished, would have nullified the default. Since plaintiff

had already invested $9 million into the project, it had many reasons to continue meeting and negotiating in order to attempt to salvage the deal despite the expiration of the closing deadline, so meetings held after the time set for the closing do not establish that an extension was orally agreed to.

Nor did plaintiff establish that the principle of equitable estoppel applies here. Nothing in its submissions demonstrates that defendant induced it to significantly and substantially rely to its detriment on the alleged oral modification (*Rose*, 42 NY2d at 344). Indeed, plaintiff points to no new obligations it undertook as a result of the alleged oral agreement, such as a requirement to pay an additional deposit, or anything else it did that was detrimental to its interests.

In the absence of partial performance of the alleged oral extension or a basis to apply the doctrine of equitable estoppel, plaintiff's breach of contract claim is not saved by the alleged past practice or course of conduct by which the parties orally extended closing dates and only later executed a written modification. The parties' past ability to arrive at a mutually acceptable written modification does not justify reliance on an assumption that they would be able to agree on the necessary written modification in the future.

Finally, the motion court did not err by authorizing defendant to renew its summary judgment motion upon submission of the documents tendered at the closing. Since the alleged oral modification adjourning the closing cannot be treated as effective, defendant's only obligation was to be ready, willing and able to tender the closing documents at the place and time set; it had no obligation to attempt tender directly to plaintiff at some location or time other than that specified in the written contract of sale. Nor could defendant's failure to earlier deliver the parties' separate development rights contract establish a breach of the contract of sale, since the parties' agreement regarding those developmental air rights provided that the failure to deliver such a contract would not affect the parties' contract of sale.

Accordingly, the order of the Supreme Court, New York County (Saliann Scarpulla, J.), entered August 3, 2011, which, to the extent appealed from, granted defendant's motion for summary judgment dismissing the complaint and denied plaintiff's cross motion for summary judgment, should be affirmed, with costs.

42

ANDRIAS, J.P., MOSKOWITZ, FREEDMAN and ABDUS-SALAAM, JJ., concur.

Order, Supreme Court, New York County, entered August 3, 2011, affirmed, with costs.